Graham, Judge,
delivered the opinion of the court:
This suit grows out of a contract for services on the part of the plaintiff in superintending the construction and carrying to satisfactory completion according to the terms and conditions of the contract certain ships and barges in a shipyard owned by the defendant, for which the defendant was to furnish the capital and to pay all the expenses, the plaintiff to provide and maintain an organization and the necessary force. The various sums mentioned in paragraph 9 of the contract to be paid by the defendant, including $6,000 each for constructing 10 barges, were to be in consideration of the faithful performance of the contract and “ in doing to the satisfaction of the owner all the work which the owner may order to be done in and upon said shipyard * * *, it being definitely understood that the fee herein provided is for any and all work on the yard which the owner may order as herein provided, as well as on hulls and barges.”
The original contract contained the following provision:
“Provided, however, that if for any reason whatsoever the owner hereafter deems it inadvisable to proceed with the construction of any of the aforementioned hulls or barges, and notifies the contractor to that effect in writing, the contractor shall comply with the order of the owner in that *250 regard, with an obligation on the owner, however, to substitute other hulls or barges of different design or size, which it is agreed the contractor shall construct under the terms and conditions hereof, for a fee to be determined by the owner, but which shall be in proportion to the fees herein to be paid, according to the character and design of the substituted boat.”
The contract was dated July 16, 1918. On October 28, 1918, the defendant ordered the plaintiff in writing to stop the work of construction on 8 of the 10 barges named in the contract. The work under the original contract as far as the construction of the 10 barges was concerned called for completion of the last barge by September 1, 1919, so that at the time of this cancellation about one-fourth of the time to be devoted by the plaintiff to the superintendence of the construction of these barges had elapsed. No work had been commenced on the barges except work on certain frames for one of the barges. All of the material had been ordered, but only a part of it had arrived on the yard. Some months later about one-third of the material was delivered to the yard owing to the fact, that the order for it could not be canceled. The yard itself and the organization was in a position, under the direction of the plaintiff, to proceed with the work.
It will be seen that the defendant had a right to stop the work on the 8 barges, as it did, and that in so doing there was no breach of the contract. However, in case it did stop the work on these barges it assumed “ an obligation ” to substitute other hulls or barges of different design and size, which it was agreed the contractor should construct under the terms and conditions of the contract “for a fee to be determined by the owner, but which shall be in proportion to the fees herein to be paid according to the character and design of the substituted boat.”
The defendant failed to substitute other barges, and the contractor proceeded to complete the work on the remaining two barges, the two Ferris hulls, and those hulls which were partly completed at the time the contract was entered into. Thereafter by reason of the failure of the defendant to substitute other hulls or barges for the said 8 barges on which work was stopped, the plaintiff asserted a claim for *251 a fee of $6,000 for each of said canceled barges, making a total of $48,000, which it claimed was due under the contract. The defendant in consideration of this claim made the plaintiff an offer of $12,000 as a compromise settlement and final adjustment of it, which offer the plaintiff refused to accept. As stated, the work called for by the contract was otherwise completed and the plant dismantled. On April 14,1920, some months after it had been dismantled, the parties entered into a supplemental contract by which the original contract as to these 8 suspended barges was “terminated, canceled, and annulled.”
The plaintiff under this supplemental contract was paid $5,810 for certain expenditures claimed to have been made by it, and the defendant assumed an obligation to settle and arrange all commitments and all matters under subcontracts and to adjust all claims and demands. It also thereunder paid the contractor the sum of $9,000 “ as an advance payment on account of fees for barges which are hereby canceled,” and the plaintiff, it was understood and agreed, reserved “ unto itself the right to sue the owner for such damages in the form of said fees for canceled barges which are claimed by the cantractor in addition to the $9,000,” the owner agreeing to pay whatever sum was adjudged to be due the contractor.
It is plain that there was no breach of this contract by the defendant in stopping the work, which it had a right to do. The breach of the contract was in failing to fulfill the obligation to substitute other hulls and barges, and it therefore follows that the plaintiff’s claim for damages grows out of the breach of this obligation and that the amount of the plaintiff’s damages is fixed by the loss growing out of the failure to fulfill this obligation.
How have these damages been proven? It is provided that in case other hulls or barges are substituted the defendant shall have the right to determine the fee, which fee is to be in proportion to the fees to be paid in the contract “ according to the character and design of the substituted boat.” As no boats were substituted, this method of fixing the fee gives no assistance in reaching a determination of the amount due to plaintiff. It is clear that the amount due *252 the plaintiff, had this obligation been fulfilled, would not have been the fee fixed by the original contract. Its compensation was fixed upon another basis. It is also clear that as the plaintiff is suing for damages for breach of the contract it must prove its damages and can not rely upon the $6,000 stated in the contract as proof.
Is there any proof in this record of the damages caused by the breach? The plaintiff relies solely upon the $6,000 stated in the contract as proof of the amount of damages-It is clear that this was not the amount to be paid if the defendant fulfilled its obligation to supply other barges, and it can not therefore be relied upon as the measure of recovery if the obligation was not fulfilled. We are of the opinion that there is no proof in the record of the damages caused by the breach.
So far as the recovery of damages as for a breach of the contract is concerned it is thus apparent that there can be none. But there is room for the assumption that the Fleet Corporation in canceling this contract as to the eight barges-was proceeding under the act of June 15, 1917, rather than under the cancellation clause of the contract, and that its fixing of $12,000 as the amount properly to be paid the plaintiff was a fixing of just compensation under that act.
It is true that the supplemental contract refers to the $9,000 to be paid as “ an advance payment on account of the fees for the barges which are hereby canceled,” but in correspondence with reference to the matter, after the plaintiff had indicated its refusal to accept $12,000 in settlement, the claims board of the Fleet Corporation informed the plaintiff that it would make a careful investigation of the matter in order to arrive at the proportion of the fees the plaintiff was entitled to receive based upon the work performed and that it “ would then be allowed to accept 75 per cent of such award and sue in the Court of Claims for the remainder.” The amount paid was 75 per cent of the award and the procedure outlined was proper only under the act referred to.
Upon this theory the Fleet Corporation having determined that $12,000 was due the plaintiff, of which 75 per cent was paid and accepted by plaintiff as a partial payment, and the facts failing to show that it is entitled either to more or less *253 than said sum, the plaintiff should have judgment for $3,000, and it is so ordered.
Hat, Judge; Dowítey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.